[No. B015039. Second Dist., Div. Five. Oct. 29, 1986.]

MICHAEL MacCHARLES, Plaintiff and Appellant, v.
MICHAEL BILSON et al., Defendants and Respondents.

## COUNSEL

Richard D. Aldrich and David C. Byers for Plaintiff and Appellant.

Bottum, Rady & Feliton and Adrian J. Guidotti for Defendants and Respondents.

## OPINION

ASHBY, J.—Plaintiff and appellant Michael MacCharles (appellant) sued Joseph Mustachio (Mustachio) for personal injuries arising out of an automobile accident. Mustachio subsequently died and his estate (Estate) was substituted as a defendant in the personal injury action, which is the first cause of action in the instant complaint.

Appellant subsequently sought and obtained permission to file a second amended complaint, alleging additional causes of action for fraud and negligent misrepresentation against Estate and against the attorneys who represented Mustachio, respondents Michael Bilson (Bilson) and Fishkin, Bilson and Taylor (Bilson's law firm). Appellant alleges that Estate intends to offer a false affirmative defense to the personal injury litigation, namely, a settlement and release executed by appellant. The release is invalid, he contends, because it was procured during settlement negotiations by means of intentional or negligent misrepresentations by Bilson, acting as Mustachio's attorney, that Mustachio had no substantial assets beyond his insurance policy limit of $50,000.[1] In reliance on these representations, appellant

---

[1] Allegedly Bilson represented to appellant's attorney, Richard L. Hecht of the Richard D. Aldrich law corporation, that Mustachio had no assets exceeding $50,000, and that further investigation would be a waste of appellant's attorney's time, causing appellant and appellant's attorney not to investigate.

executed a release for $50,000, but subsequently learned that Mustachio indeed had substantial assets, so appellant has refused the settlement draft offered by the insurer and has continued his first cause of action against Estate. Appellant proposes to sue Estate and respondents in a second cause of action for fraud and a third cause of action for negligent misrepresentation. His damages, he alleges, are that he will now be forced to litigate the invalidity of the release in the trial of the first cause of action, and this will cause delay in recovery of judgment, extra litigation expense and attorney's fees, and mental and emotional stress.

■ We hold the trial court properly sustained respondents' demurrers to the second and third causes of action and properly ordered them dismissed.[2]

In sustaining the demurrer, the trial court cited Civil Code section 47, subdivision 2, the absolute privilege for publications made in a judicial proceeding.[3] Most of appellant's opening brief is devoted to his claim that the traditional elements of this privilege should be defined differently when the injury is not "defamation-like" in character. We conclude the issue suggested by appellant is not properly raised by his own case. Here appellant has simply failed to allege any properly compensable damages from respondents' conduct. For this reason we do not need to determine if section 47, subdivision 2, applies to this case.

Appellant discovered the alleged fraud in time to do something about it. Appellant refused to sign the settlement draft; he did not dismiss his suit against Estate; he has elected to disregard the settlement by continuing to pursue his first cause of action against Estate. So far appellant has not suffered any judgment or any limitation on his right of recovery against Estate based upon his execution of a release. Assuming that Estate raises the release as an affirmative defense to the first cause of action, appellant will have the opportunity to prove that the release should be considered invalid.[4] If appellant is correct as to the invalidity of the release, he will prevail on that issue, and his recovery against Estate will not be limited by the release.[5] Indeed, if appellant is correct, he will prevail in his first cause

---

[2]The trial court treated separately the demurrers of respondents and of Estate. Only the ruling as to respondents is before us.

[3]Civil Code section 47 provides in pertinent part: "A privileged publication or broadcast is one made—. . . [¶] 2. In any . . . judicial proceeding . . . ."

[4]The trial court made a separate order, not before us, which required Estate to answer the complaint. By the time of the dismissal order as to respondents, Estate had answered the second amended complaint, raising the release as an affirmative defense.

[5]If appellant does not prevail on that issue, and is thereby limited to $50,000 as provided by the release, he might seek recourse against his own attorney for his reliance on opposing counsel's representations. The issue of attorney liability for misrepresentations to opposing attorneys in settlement negotiations would then arise when appellant's attorney sought a remedy for the alleged misrepresentations on which he relied to his detriment.

of action and will also recover his court costs pursuant to Code of Civil Procedure section 1021 et seq.

He is entitled to no more. Although he alleges that he will incur additional attorney's fees and suffer mental and emotional stress from having to disprove the defense, these are not properly compensable items of damages in the posture of this case. Appellant cites no authority which could support the proposition that a plaintiff may, in the very same action he prosecutes against a defendant, also sue the defendant and the defendant's attorney for putting on a false defense in that action.

In *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 847-848 [92 Cal.Rptr. 179, 479 P.2d 379], the Supreme Court gave strong reasons of judicial policy for the rule that a defendant may not file a cross-complaint for malicious prosecution against the plaintiff in the very action which defendant contends is being maliciously prosecuted. These reasons include not only a danger of confusion and prejudice of the issues but also the creation of conflicts of interest between attorney and client, requiring retention of separate counsel, and the risk that parties may be deterred from asserting bona fide claims.

These same reasons support the corollary conclusion that a plaintiff may not, in the very same action, assert independent causes of action against the defendant and defendant's attorneys for asserting false defenses to plaintiff's main claim. (See *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 127 [4 P. 1106]; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 52-53 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) That is what appellant is attempting here.

Suppose that during the trial of the first cause of action Estate and respondents, in order to defeat appellant's claim, offered into evidence a *forged* settlement agreement (see *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 488-489 [104 Cal.Rptr. 650]) or perjured testimony (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393]). Appellant would be expected to meet and defeat such evidence at trial, but he would have no independent cause of action against Estate and respondents for asserting such defense. (*Pettitt* v. *Levy, supra*; *Kachig* v. *Boothe, supra*, at p. 633; *Portman* v. *George McDonald Law Corp.* (1979) 99 Cal.App.3d 988, 990 [160 Cal.Rptr. 505].) He would have no cause of action for the mental distress of having to defeat a false claim. (*Kachig* v. *Boothe, supra*, 22 Cal.App.3d at p. 641.) Nor would he be entitled to recover attorney's fees for having defeated a false defense. Traditionally in our American judicial system the prevailing

party is not entitled to recover attorney's fees as court costs. (*Olson* v. *Arnett* (1980) 113 Cal.App.3d 59, 67-69 [169 Cal.Rptr. 629].)

Thus when appellant alleges that he will incur additional expense and attorney's fees and suffer mental distress because he will have to disprove the proposed affirmative defense, he raises no issue of compensable damages. These types of damages are not normally compensable. It has always been understood in our system that attorney's fees and the mental stress of litigation are burdens which the parties must ordinarily bear themselves.

Appellant therefore misses the point when he cites authority for the propositions that in an ordinary action for fraud or misrepresentation, mental distress may be a proper item of damages, or that when one is forced by the tort of another to sue a third person, litigation expenses including attorney's fees are recoverable as damages. (See *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 112 [128 Cal.Rptr. 901].) This is not an ordinary fraud action nor one prosecuted against a third party. The alleged "fraud" involved was committed by the defendant and defense attorneys in the course of the very judicial proceeding appellant is prosecuting against them.[6] Appellant can meet this defense in the trial of his first cause of action. If he prevails, he will recover proper damages for the auto accident and statutory court costs. By long-standing tradition he is not entitled to recover attorney's fees or for the mental stress of litigating. Appellant cannot avoid long-established procedures by labeling his opponents' conduct as "fraud" or "negligent misrepresentation."

In conclusion, appellant has not suffered compensable damage in reliance on the alleged fraud. He has the opportunity to disprove the affirmative defense tendered to his first cause of action. That is where the issue belongs, and he has stated no ground for an independent cause of action against respondents.

The order of dismissal is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

---

[6]Statements in settlement negotiations are considered made in a judicial proceeding. (*Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832, 842-843 [184 Cal.Rptr. 317, 30 A.L.R.4th 561]; *O'Neil* v. *Cunningham* (1981) 118 Cal.App.3d 466, 475 [173 Cal.Rptr. 422].)